UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
THERESA ROMANO,                                    )
L.R. BLAKE TRUST, and                              )
CONCETTA ROMANO                                    )
                              Plaintiffs           )
                                                   )
V.                                                 )
                                                   )
ARBELLA MUTUAL INSURANCE                           )
COMPANY,                                           )
                              Defendant            )
_____)

**PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT ARBELLA MUTUAL INSURANCE COMPANY**

**I.     STATEMENT OF UNCONTESTED MATERIAL FACTS.**

Plaintiffs submit the following material and undisputed facts:

1.     Plaintiff Theresa Romano and her sister, Concetta, are 72 and 70 years old,

respectively, and have lived at the subject premises located at 49 Bowdoin

Avenue, Boston, for over 60 years. (See pp. 5, 13 of Theresa Romano's

Examination Under Oath, attached as Exhibit 1).

2.      Plaintiff Theresa Romano ("Plaintiff") has power of attorney on behalf of

her sister, Concetta, who is physically handicapped. (See affidavit of Theresa

Romano, attached as Exhibit 2).

3.      Plaintiff has a number of physical ailments as well.  She has suffered from

chronic sciatica for the past 22 years.  She also has neuritis in her feet.  In 1985

she lost her right breast and all of her lymph nodes to cancer.  In 1993, she lost her

left breast to cancer.  In 1998 she underwent surgery to remove cancer from

beneath her left armpit.   She suffers from an uncontrollable blood pressure and

frequently experiences heart palpitations resulting in regurgitation, high blood

pressure, and an abnormal "double pulse" in her neck. (See affidavit of Theresa Romano, attached as Exhibit 2).

4.     Plaintiffs have provided numerous documents, along with signed authorizations for release of information to Defendant Arbella Mutual Insurance Company ("Arbella") in response to its request for documents pertaining to the policy." (See documents provided to Arbella, attached as Exhibit 3).

5.     In response to Arbella's request, Plaintiff submitted to a sworn recorded statement on April 2, 2002, followed by an Examination Under Oath ("EUO") on July 24, 2002. (See affidavit of Theresa Romano, attached as Exhibit 2).

6.     Through these examinations, Plaintiff provided Arbella with information regarding her and her sister's personal and financial background, including a detailed account of their activities during the hours immediately preceding and following the fire.

7.     Plaintiff is a retired special education teacher who receives approximately $42,000.00 annually in disability income.  She also has savings accounts and mutual funds.  (See p. 4 of Recorded Statement, attached as Exhibit 4).

8.     Plaintiffs inherited the subject premises free and clear of liens, attachments, or a mortgage. (See p. 25 of Recorded Statement, attached as Exhibit 5).

9.     At the time of the loss, Plaintiff owned two homes – paid for in cash – in Nashua, New Hampshire (See p. 28-29 of Recorded Statement, attached as Exhibit 6).

10.     Plaintiff would often spend 2-3 days at a time in Nashua, while her sister,

Concetta, would sometimes stay at the subject premises. (See p. 35-36 of Recorded Statement, attached as Exhibit 7).

11.    Upon notification of the loss, Plaintiff promptly notified Arbella of this claim. (See affidavit of Theresa Romano, attached as Exhibit 2).

12.    On January 4, 2002, Plaintiff met with fire officials who were investigating the cause and origin of the fire.  She signed a fire scene examination consent form, permitting Boston Fire Department officials and Arbella to thoroughly examine the scene. (See affidavit of Theresa Romano, attached as Exhibit 2).

## II.    ARGUMENT.

Summary judgment is permissible when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) citing Fed.R.Civ.P. 56(c).  Summary judgment is to be viewed in the light  most flattering to the nonmoving and indulging all reasonable inferences in that party's favor. *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994), citing *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir.1989); *Mack v. Great Atlantic & Pacific Tea Co*., 871 F.2d 179, 181 (1st Cir.1989).

The moving party bears the burden of showing "an absence of evidence to support the nonmoving party's case." *Maldonado-Denis*, 23 F.3d at 581.  Here, Defendant Arbella cannot meet its burden of proof and this Court should deny its Motion for Summary Judgment.

**A.    PLAINTIFFS HAVE FULFILLED THEIR DUTY TO COOPERATE WITH ARBELLA IN ITS INVESTIGATION OF THIS FIRE LOSS.**

Arbella contends, as a matter of law, that the policy pertaining to the subject premises should be voided because of Plaintiffs non-cooperation. (D. Br. at pp. 8-12).[1] Citing *Rymsha v. Trust Insurance Co.*, 51 Mass. App. Ct. 414 (2001), Arbella maintains that the failure to produce certain requested documents voids its obligation to pay under the policy as a matter of law. Arbella's claim for summary judgment must be denied because Plaintiffs, in good faith, fully cooperated with Arbella in its investigation of this fire loss.

Arbella's reliance on *Rymsha* is misplaced. In *Rymsha,* the insured, who claimed that $32,000 in personal property was stolen from her rental car, did not comply with the insurer's numerous requests to provide documents and photographs pertaining to the *stolen items*, and documents from her businesses indicating a *history of insurance claims*. *Rymsha,* 51 Mass. App. Ct. at 415-416. The parties in *Rymsha* stipulated that it was appropriate for the Superior Court judge to determine whether the requested documents were "pertinent to the loss claimed by *Rymsha.*" *Id*. at 417.

As a preliminary matter, the parties here have not stipulated that the requested documents are pertinent to the loss, as did the parties in *Rymsha.* Since the issue of whether the failure to produce the requested documents at bar voids the policy is a material question of fact, this Court is not, as Arbella suggests, presented with a purely legal question. Summary judgment should be denied in this case because there is a dispute of material fact as to whether Plaintiffs breached the cooperation clause.

---

[1] References to Arbella's memorandum in Support of Motion for Summary Judgment will be made as (D.Br. at p. [ ])

The Plaintiffs have complied with the standard of cooperation set forth in the controlling case of *Mello v. Hingham Mut. Fire Ins. Co.,* 421 Mass. 333, 337 (1995). In *Mello,* the Court noted several obligations incumbent upon an insured as a condition precedent to recovery under the policy. First, the insured must provide prompt notice and a sworn proof of loss.[2] *Mello*, 421 Mass. at 336. Upon discovery of the fire the following day, Plaintiff immediately notified Arbella of the loss. (See affidavit of Theresa Romano, attached as Exhibit 2). On May 30, 2002, Plaintiffs produced sworn statements in proof of loss submitted by Seltser & Seltser, Public Adjusters, Inc. (See Exhibit 3). The sworn statements set forth in detail the items of personal and real property damaged in the subject fire, their replacement value, and their actual cash value at the time of the loss, including depreciation. (See Exhibit 3). The production of the sworn proof of loss assisted Arbella in its handling of the investigation of this claim.

The second obligation enunciated in *Mello* was submission to an examination, as long as the request is reasonable. *Mello*, 421 Mass. at 337. Here, Plaintiff Theresa Romano submitted to *two* examinations: a sworn recorded statement on April 2, 2002, then an EUO on July 24, 2002. (See Exhibit 2). Through these examinations, she provided Arbella with information regarding her and her sister's personal and financial background, including a detailed account of their activities during the hours immediately preceding and following the fire. (See Exhibit 2). Plaintiffs submission to a recorded statement and an EUO clearly complies with the standard of cooperation set forth in *Mello*.

Arbella maintains that Plaintiffs have made a "*blanket refusal* to provide documents that are reasonably necessary to establish whether the Plaintiffs may have had any involvement in or

---

[2] The *Mello* Court also cited the well-established precedent that the insurer must establish prejudice before it may be discharged of its obligations under the policy. See *Darcy v. Hartford Ins. Co.*, 407 Mass. 481, 489 (1990); *Johnson Controls, Inc. v. Bowes*, 381 Mass. 278 (1980).

knowledge of the suspected arson that caused the loss and/or whether the occupancy provision of the policy has been met."(D. Br. at pp. 10).  This argument ignores Plaintiffs substantial cooperation with Arbella in its investigation of this case.

Upon discovery of the fire, Plaintiffs have agreed to cooperate with the fire investigation. On January 4, 2002, Plaintiff met with fire officials who were investigating the cause and origin of the fire.  She signed a fire scene examination consent form, permitting Boston Fire Department officials and Arbella to thoroughly examine the scene. (See Exhibit 2).

Pursuant to Arbella's request for documents, Plaintiffs produced legal documents evidencing the existence of the L.R. Blake Realty Trust, its purpose, and schedule of beneficiaries. (See Exhibit 3).  Plaintiffs also produced a document providing Theresa Romano with durable power of attorney for her sister's affairs. (See Exhibit 3).  The production of these documents complied with the standard set forth in *Mello* as it aided Arbella in determining whether the policy was applicable to the subject premises.

Plaintiffs provided medical authorizations permitting the release of relevant medical records from the Carney Hospital on the evening of the fire. (See Exhibit 2).  The production of these documents helped Arbella confirm the accuracy of Plaintiff Theresa Romano's claim that she went to the hospital complaining of heart palpitations.  Arbella was also able to conduct interviews of witnesses at the Carney Hospital who corroborated Plaintiffs version of what occurred while she and her sister were at the hospital on the evening of the fire.[3]

Plaintiffs have also repeatedly agreed to provide any electrical and/or utility bills evidencing their occupancy of the subject premises.  (See p. 58 of EUO).   Since all these

---

[3] Indeed, Arbella has conducted a complete and thorough confirmation of every fact provided by Theresa Romano in her two sworn statements and has discovered no inconsistencies with her version of events surrounding the loss.

documents were destroyed in the fire, Plaintiffs were unable to produce them. Arbella could have simply obtained a signed authorization permitting the release of these documents, as they did with the hospital records. (Indeed, Arbella has obtained the requested electrical and utility bills pertaining to the subject premises since Plaintiffs filed suit.) Instead, Arbella chose to do nothing and void the policy for the insured's failure to obtain documents that were destroyed in a fire.

Arbella, citing *Rymsha*, argues that the financial status of an insured can be relevant to an insurer's investigation of a claim, and that the requested bank records are relevant to this loss. (D.Br. at p. 10). Again, it is worth noting that the insured in *Rymsha* did not provide, among other things, tax returns, credit card information, business records showing a history of insurance claims. *Rymsha,* 51 Mass. App. Ct. at 415-416. Such financial documents were pertinent to the claimed loss of $30,000 of personal property because they would tend to show whether the insured had ever really owned such items.    In *Rymsha*, the insured's financial status was the major issue in the investigation. There, the trial judge concluded that the examination under oath and the circumstances of her claim, "gave rise to the reasonable suspicion that [the insured] did not have the resources to purchase the allegedly stolen items." *Id.* at 417-418. This case, however, does not involve the loss of money or bank proceeds, and the investigation does not turn on the financial status of the insured. The request for bank information is not pertinent to this fire loss.

In *Rymsha,* the Court noted that when the insured refused to provide documents evidencing the purchases of the lost items, the insurer was left in the "untenable position of [ ] paying the claim without question . . ." *Id.* at 418. Arbella is not presented with the same type of handicap to its investigation.

Here, Arbella had the benefit of a complete and thorough investigation into the circumstances surrounding this fire loss.  They obtained information on the cause and origin of this fire loss, the Plaintiffs' personal and financial background and a detailed account of Plaintiffs' activities during the hours immediately preceding and following the fire.  Further, they conducted their own independent examination to ascertain the accuracy of this information.

While the insured is obligated to "disclose all facts within her knowledge and otherwise aid the insurer in its determination of coverage under the policy," the insured "has no obligation to assist the insurer in any effort to defeat recovery of a proper claim." *Metlife Auto & Home v. Cunningham*, 59 Mass. App. Ct. 583, 588 (2003) citing *Waste Management, Inc. v. International Surplus Lines Ins. Co.*, 144 Ill.2d178, 204 (1991).

Arbella argues that they need financial records to uncover a possible motive for this loss. However, as Arbella discovered in its examinations, the Romanos are well off, financially.  As discussed, they own several properties and have independent sources of income.  (See Exhibits 4 & 6)  Certainly, the Romanos' financial status has been corroborated by Arbella in its investigation of this claim.  Arbella cannot legitimately maintain that there is a financial motive for this loss.

Arbella is wholly unable to how it has been prejudiced by the failure to provide this information.  Failure to cooperate voids the policy only if the insurer makes "an affirmative showing of actual prejudice resulting from" the failure. *Darcy v. Hartford Ins. Co.*, 407 Mass. 481, 491 (1990).  A showing of prejudice is not easily made. See 1 Windt, *Insurance Claims & Disputes* § 3:2, at p.179-182 (4th ed.2001).  On the issue of prejudice, Arbella argues that the failure to provide reasonably requested financial documents establishes a presumption of prejudice. (D.Br. at p. 10).  In light of the complete and thorough investigation conducted by

Arbella in this case, the Court cannot conclude that the withholding of documents not pertinent to the fire loss has prejudiced Arbella in its determination of coverage.  Accordingly, summary judgment must be denied.

**B.  THE PLAINTIFFS HAVE NEVER MADE MATERIAL MISREPRESENTATIONS REGARDING THE OCCUPANCY OF THE SUBJECT PREMISES.**

Arbella next argues that Plaintiffs made "misleading statements" and have "concealed facts" regarding the occupancy of the subject premises. (D.Br. at p. 12-14).  Arbella supports these accusations with evidence obtained by its investigators which, they contend, contradict Plaintiffs sworn testimony in this case.  Since there is a dispute of fact as to whether Plaintiffs materially breached the cooperation clause, summary judgment should be denied on this issue as well.

Arbella's argument regarding occupancy is confusing and inconsistent.  The policy can be voided if the premises are "vacant or unoccupied" for a period of 60 consecutive days.  Arbella sought to determine whether the premises were vacant prior to the loss.  As previously discussed, they requested electrical and utility bills because they were relevant to the issue of occupancy, as they would show usage for each month over a course of years.  These bills have since been obtained and they show usage for each month prior to the loss.  The production of the electrical and utility bills only corroborate Plaintiffs claim of occupancy prior to the loss.

Indeed, Arbella acknowledges that the subject premises were occupied prior to the loss. According to Arbella's investigation, a caretaker was living at the subject premises at the time of the loss. (D.Br. at p. 13).  Thus, even assuming Arbella's contention to be accurate, it would appear that the subject premises were occupied as required under the policy.

Later, Arbella argues that its investigation revealed that the subject premises were unoccupied prior to the loss.  To this end, Arbella claims that there was evidence that the subject premises lacked furniture, food, and that Ms. Romano claimed to have spent about forty percent of her time in New Hampshire. (D.Br. at p. 14).   It seems Arbella has yet to determine whether the subject premises was occupied or unoccupied prior to the loss.  Arbella, by its *own argument* on this point, has created a material dispute of fact as to whether the subject premises was occupied or unoccupied for more than 60 consecutive days before the fire.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court deny Arbella's Motion for Summary Judgment.

Respectfully submitted,
The Plaintiffs Theresa Romano, *et al.,*
By their attorneys,


//S//Austin J Freeley                                    //S//Stephen Hrones
Austin J Freeley (BBO No. 563349)          Stephen Hrones (BBO No. 242860)
FREELEY & FINN                                        HRONES & GARRITY
Lewis Wharf-Bay 221                                 Lewis Wharf-Bay 232
Boston, MA 02110                                      Boston, MA 02110-3927
T)723-9538                                                 T)617/227-4019


**CERTIFICATE OF SERVICE**

I, Stephen Hrones, hereby certify that, on this 27th day of August, 2004, I have served a true and correct copy of the foregoing  PLANTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF DEFENDANT ARBELLA MUTUAL INSURANCE COMPANY  by United States First-Class Mail, postage prepaid, as follows: Lewis C Eisenberg, Esq., Nicholas A Kenney, Esq., COSGROVE EISENBERG & KILEY, 803 Hancock St, POB 189, Quincy, MA 02170.


//S//Stephen Hrones_____
Stephen Hrones