UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THERESA ROMANO, <br> L.R. BLAKE TRUST, and <br> CONCETTA ROMANO <br>       Plaintiffs <br> <br> V. <br> <br> ARBELLA MUTUAL INSURANCE <br> COMPANY <br>       Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFF'S REPLY TO DEFENDANT'S
RENEWED MOTION FOR SUMMARY JUDGMENT**

**FACTS**

Plaintiffs rely on the facts previously supplied by the parties in the original motion and opposition to Motion for Summary Judgment. At the scheduling conference, and prior to the commencement of discovery, the parties agreed to the question of whether Plaintiffs' failure to cooperate voided Defendant Arbella Mutual Insurance Company's ("Arbella") obligation under the policy. Plaintiffs' move to strike Defendant's Statement of Facts, as they are outside the scope of the limited question posed to the Court by Arbella in its Motion for Summary Judgment.

**ARGUMENT**

  **I. THIS COURT'S DECISION TO ALLOW DEFENDANT ACCESS TO FINANCIAL PLAINTIFFS' FINANCIAL DOCUMENTS DOES NOT NECESSITATE THAT PLAINTIFFS' G.L. c. 93A/176D CLAIMS BE DISMISSED**

Arbella has brought this Renewed Motion for Summary Judgment in which it urges this Court to reconsider its decision denying Defendant's Motion for Summary Judgment. Arbella

first argues that since this court concluded that it was entitled certain requested financial documents, Arbella cannot have violated G.L. c.93A and G.L. c.176D since it was legally correct in its disclaimer of coverage. (D. Mem. at pp. 4-10).[1] As a threshold matter, Arbella's motion to dismiss the 93A/176D claim should not be considered since it was not properly raised in Arbella's original motion before this Court. This motion should be made upon the completion of discovery in this case, after which Plaintiffs' can demonstrate that Arbella never intended to pay this claim, regardless of any documents produced by Plaintiffs, thus violating G.L. c.93A and G.L. c.176D.

Should this Court consider the 93A/176D argument at this time, it should conclude that Arbella did not show that it correctly *disclaimed coverage* when it denied Arbella's Motion for Summary Judgment. On the contrary, this Court denied its Motion for Summary Judgment. Implicit in the Court's Order was the recognition that Arbella did not to show how it was prejudiced by the omission of the financial documents, a necessary prerequisite for denial of coverage under the policy. See *Metlife Auto & Home v. Cunningham*, 59 Mass. App. Ct. 583, 590 (2003), citing *Darcy v. Hartford Ins. Co.*, 407 Mass. 481, 491 (1990). Arbella is wholly unable to show how the Plaintiff's failure to produce the requested financial documents prejudiced its investigation in this case. Accordingly, Arbella's motion should be denied.

    a.    The 93A/176D argument is not properly before the Court

As a preliminary matter, Arbella's Renewed Motion for Summary Judgment regarding 93A/176D claim is not properly before the Court. In support of its 93A/176D argument, Arbella

---

[1] References to Defendant's Memorandum of Law will be made as "(D.Mem. at p. [ ])." References to exhibits attached to Kenny's Affidavit in Support of Renewed Motion for Summary Judgment will be noted as "(Ex. [ ], p. [ ])." Allusions to exhibits attached to Plaintiffs Opposition to Summary Judgment will be made as "(Ex. [ ] to Opp.)."

relies on a footnote to its memorandum that suggests that, should the contract claim be dismissed, then the 93A/176D should be dismissed. However, Arbella did not otherwise advance the 93A/176D argument in its original motion. Indeed, the Plaintiffs did not respond to that argument, and this Court never considered that issue. Nor was the topic of 93A/176D raised at the original scheduling conference. Plaintiffs never consented to having the 93A/176D claim litigated at that stage of the proceedings. Arbella's argument regarding 93A/176D cannot be "renewed" when it was not raised in Arbella's original motion for summary judgment.

Summary judgment is appropriate "<u>after</u> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Wolinetz v. Berkshire Life Ins. Co.*, 361 F.3d 44, 47 (1st Cir. 2004), quoting Fed.R.Civ.P. 56(c)(emphasis added). Here, Plaintiffs have not conducted *any* discovery in this case. Plaintiffs have served numerous requests for documents and answers to interrogatories upon Arbella, to which they have yet to receive a response. Plaintiffs also intend to conduct depositions of Arbella's representatives and persons with knowledge pertaining to the basis for Arbella's decision to deny this claim. Any consideration of summary judgment regarding the 93A/176D claim should be made only after the completion of discovery.

    b.    <u>Arbella's handling of this claim suggests bad faith</u>

In its argument in favor of dismissal of the 93A/176D claim Arbella maintains, "There is no evidence that Arbella acted in bad faith or was attempting to burden the Plaintiffs…" (D.Mem. at p. 8). As has been detailed in Plaintiffs Opposition to Defendants Motion for Summary Judgment, Plaintiffs' substantially cooperated with Arbella's investigation of this

claim. As to the financial records, Plaintiffs have consistently expressed a willingness to provide them to Arbella prior to suit, especially if it would have resolved this case. Arbella has consistently rebuffed any of Plaintiffs' attempts toward amelioration.

In fact, Arbella did not need the documents to assist its determination of coverage. In its response to Plaintiffs' 93A demand letter, Arbella, through its counsel, writes, "[Y]our clients and their prior counsel had ample opportunity to [cooperate] back at the time that the investigation was ongoing. The point is your clients did not cooperate and they voided the policy under decided case law." (Ex. B, p.2.). It is not merely disingenuous, but unfair and deceptive for Arbella to argue that the requested documents were necessary for its determination of coverage when they clearly refused any attempts made by Plaintiffs to remedy any perceived noncompliance with the policy provisions.

Arbella's reliance on *M. DeMatteo Const. Co. v. Century Indem. Co.,* 182 F.Supp.2d 146 (D.Mass.2001) is wholly misplaced. In that subrogation case, this District Court, Young, J., held that when "[an insurance] contract is ambiguous, "doubts as to the intended meaning of the words must be resolved against the insurance company that employed them and in favor of the insured." *Id.* at 157 quoting from *August A. Busch & Co. v. Liberty Mutual Ins. Co.,* 339 Mass. 239, 243 (1959). The Court held that language specifying that the insured "will act in concert with the Company" and "do nothing after a loss to prejudice such rights of subrogation" was ambiguous as to the degree of affirmative action required of the insured. *Id.* The case at bar also involves the analogous ambiguity of what level of cooperation is required of an insured under a policy of insurance. Thus, from a contract interpretation standard, *M.DeMatteo* supports

Plaintiffs contention that Arbella should not have disclaimed coverage based on Plaintiffs' inability to provide Arbella with financial documents.

Arbella argues that since Plaintiffs were not going to provide the requested documents, it "had to" disclaim coverage. (D.Mem. at. p. 3). First of all, this statement is incorrect as a matter of law. An insurer can only disclaim liability when the insured's breach of the cooperation clause was "substantial and material" and the insured can show actual prejudice by the failure to cooperate. *Darcy*, 407 Mass. at 489-490. Here, Arbella cannot show how the failure to produce financial documents "substantially" hampered its investigation. Therefore, Arbella was incorrect in concluding that it was forced to deny the claim when Plaintiffs did not provide the requested financial information.

Second, "[A]n insurer may not disclaim liability due to lack of cooperation unless it has exercised 'diligence and good faith' in obtaining that cooperation." *Darcy*, 407 Mass. at 491. Here, Arbella did not make a good faith effort to obtain these documents. Had Arbella truly required financial information for its investigation – which it most certainly did not – it could have simply requested that Plaintiffs' sign an authorization permitting the release of such information. Such a procedure is standard practice in the insurance industry and would have yielded the requested information. Instead, Arbella chose to sit on its hands, awaiting full cooperation from Plaintiffs.[2]   Arbella can hardly claim prejudice by Plaintiffs' failure to provide documents that it could have obtained for itself.

---

[2] The insureds are sick elderly women who lost their home – along with everything in it – in a fire. Apparently, with Arbella, the concept of "Chivalry" has lost all meaning.

Arbella never intended to pay for this loss. Plaintiffs have known from the moment Arbella commenced its investigation that Arbella had assumed a defensive posture with respect to this claim. In its denial letter, counsel for Arbella writes, "Suffice it to say, an active investigation undertaken by Arbella raised many questions regarding your clients' conduct and nothing contained in your letter changes that assessment." (Ex. B, p. 1). First of all, Arbella has confirmed the accuracy of every component to Plaintiffs version of events surrounding the loss.[3] Indeed, as the letter indicates, Arbella had compiled a substantial factual background of this loss "through its investigation, the statement taken of Theresa Romano of April 2, 2002, and the examination under oath of Theresa Romano of July 24, 2002." (Ex. B, p. 1). Arbella's claim that it needs Plaintiffs' financial information to conclude its investigation flies in the face of earlier representations made by its counsel.

Once Arbella made its decision to deny coverage, it did not matter what documents Plaintiffs were able to secure. Indeed, the very act of referring this case to outside counsel suggests that Arbella had already denied Plaintiffs' claims at the time it was supposedly seeking to determine liability. Again, discovery of Arbella's claim file will reveal exactly when Arbella referred this case to counsel and when it denied coverage. Will Arbella still be able to claim (with a straight face) that it "had to" deny Plaintiffs' claim for failure to provide financial statements after Plaintiffs have obtained its claims file? Plaintiffs' are confident that once discovery is completed, it will be able to demonstrate Arbella's duplicity in the handling of this claim to this Court.

---

[3] The facts surrounding the loss are not germane to the issues presented in this motion and should not be raised at this time. Plaintiffs seek to litigate these issues upon the completion of discovery.

This situation is hardly comparable to the situation presented in *Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc.*, 419 Mass. 462 (1995). In *Lumbermens* the insurance company disclaimed coverage because its policy limiting coverage to "private passenger automobiles," and not "pickup trucks." The Court concluded that the term "private passenger automobile" was clear and unambiguous, and that its plain and ordinary meaning does not include a pickup truck. *Id.* at 466. The case at bar, however, does not involve the discrete legal question of whether the Plaintiffs' were covered under the policy. The *Lumbermans* case has no application to the facts of this case.

Finally, Arbella has consistently misrepresented the circumstances of this loss. For example, Arbella claims that Plaintiffs "have not disputed that the fire was the result of arson." (D.Mem. at p. 2). This statement is not only untrue, but it is another example of Arbella impermissibly injecting issues that go well beyond the very limited scope of the original Motion for Summary Judgment, i.e., "whether failure to produce certain financial documents voids Arbella's obligations under the policy?"

Arbella states that the Boston Fire Department concluded the fire was a result of arson, yet the one-page *preliminary* report indicates that the cause of the fire is "unknown." (Ex. E). Not having the benefit of discovery, Plaintiffs can only ask, "Where is the full report?" How can a fire be termed "suspicious" when investigators cannot identify a cause? Plaintiffs seek answers to these and many other questions in its interrogatories and requests for documents and things propounded to Arbella. Again, Plaintiff seeks the opportunity to conduct discovery before this Court entertains any additional motions by Arbella.

Arbella is wholly unable to how it has been prejudiced by the failure to provide this information. Failure to cooperate voids the policy only if the insurer makes "an affirmative showing of actual prejudice resulting from" the failure to produce information. *Darcy v. Hartford Ins. Co.*, 407 Mass. 481, 491 (1990). A showing of prejudice is not easily made. See 1 Windt, *Insurance Claims & Disputes* § 3:2, at p.179-182 (4th ed.2001). On the issue of prejudice, Arbella argues that the failure to provide reasonably requested financial documents establishes a presumption of prejudice. (D.Br. at p. 10). In light of the complete and thorough investigation conducted by Arbella in this case, the Court cannot conclude that the withholding of documents not pertinent to the fire loss has prejudiced Arbella in its determination of coverage. Accordingly, Arbella's Renewed Motion for Summary Judgment on the 93A/176D claim must be denied.

    II.    **THIS COURT'S ORDER SHOULD BE UPHELD WHERE PLAINTIFFS HAVE SUBSTANTIALLY COMPLIED WITH ARBELLA'S INVESTIGATION AND WHERE ARBELLA WAS NOT PREJUDICED BY PLAINTIFFS INABILITY TO PRODUCE THE REQUESTED DOCUMENTS**

Arbella is under a duty to "pay any claim promptly, and if it is later found to have acted inappropriately delayed or withheld payment, it may significantly increase its own liability." *Mello v. Hingham Mutual Fire Insurance Compay,* 421 Mass. 333, 341-342 (1995). Presently, Arbella has receipt of all the requested documents and information it needs to complete its investigation. With respect to the recently obtained financial records, Arbella can now verify Plaintiffs' claims that they had bank accounts in various banks in Massachusetts and New

Hampshire and filed income tax returns.[4] With the production of this information, Arbella should finally be in a position to settle these claims. Accordingly, Plaintiffs renew their request for a fair settlement of these claims pursuant to G.L. c. 93A and G.L. c.17D.

    a.    <u>Plaintiffs' substantial cooperation</u>

"Under current law, breach of the duty to cooperate on the part of an insured must be 'substantial and material' before it permits an insurer to disclaim liability." *Darcy,* <u>supra</u>, 407 Mass. at 488 (citations omitted). Here, Plaintiffs have not "substantially and materially" breached the cooperation clause. To the contrary, they have substantially cooperated with Arbella's investigation. Accordingly, Arbella cannot legally disclaim liability for their inability to produce certain financial documents.

The Plaintiffs have complied with the standard of cooperation set forth in the controlling case of *Mello v. Hingham Mut. Fire Ins. Co.,* 421 Mass. 333, 337 (1995). In *Mello,* the Court noted several obligations incumbent upon an insured as a condition precedent to recovery under the policy. First, the insured must provide prompt notice and a sworn proof of loss. *Mello*, 421 Mass. at 336. As has been previously argued, Plaintiffs complied with this requirement. Second, they must submit to an examination, as long as the request is reasonable. *Mello*, 421 Mass. at 337. Plaintiffs submitted to recorded statement and an examination under oath. Plaintiffs have thus complied with the standard of cooperation set forth in *Mello.*

In *Rymsha v. Trust Insurance Co.,* 51 Mass. App. Ct. 414, 417 (2000), the Appeals Court noted that the standard of cooperation set forth in Mello should include an obligation to produce

---

[4] Undoubtedly, Arbella has had access to much of Plaintiffs' financial information by means of the many databases available to its investigators on the Internet and elsewhere.

9

documents pertinent to the claimed loss.  This was especially apparent in that case, since insured in *Rymsha* did not provide, among other things, tax returns, credit card information, business records showing a history of insurance claims. *Rymsha,* 51 Mass. App. Ct. at 415-416.  Such financial documents were pertinent to her claimed theft of $30,000 of personal property from her rental car because they would tend to show whether the insured had ever really owned such items; whether she had a history of fraudulent claims; and whether she was in financial distress at the time of the alleged theft.[5]

      Here, Plaintiffs have substantially cooperated with Arbella's investigation.  As discussed, on January 4, 2002, Plaintiff met with fire officials who were investigating the cause and origin of the fire and signed a fire scene examination consent form, permitting Boston Fire Department officials and Arbella to thoroughly examine the scene. (Ex. 2 to Opp.).  Plaintiffs produced legal documents evidencing the existence of the L.R. Blake Realty Trust, its purpose, and schedule of beneficiaries. (Ex. 3 to Opp.).  Plaintiffs also produced a document providing Theresa Romano with durable power of attorney for her sister's affairs. (Ex. 3 to Opp.).  Plaintiffs provided medical authorizations permitting the release of relevant medical records from the Carney Hospital on the evening of the fire. (Ex. 2 to Opp.).  Plaintiffs have also repeatedly agreed to provide any electrical and/or utility bills evidencing their occupancy of the subject premises.  The production of these documents complied with the standard set forth in *Mello* as it aided Arbella in determining whether the policy was applicable to the subject premises.

---

[5] The trial judge in *Rymsha* concluded that the examination under oath and the circumstances of her claim, "gave rise to the reasonable suspicion that [the insured] did not have the resources to purchase the allegedly stolen items." *Id*. at 417-418.  No such suspicion exists regarding Plaintiffs' financial resources.

In *Rymsha,* the Court noted that when the insured refused to provide documents evidencing the purchases of the lost items, the insurer was left in the "untenable position of [ ] paying the claim without question . . ." *Id.* at 418. Arbella is not presented with the same type of handicap to its investigation of this claim.

The present case is readily distinguishable from *Lafleur v. Trust Ins. Co.*, (unpublished)(2003) which Arbella cites in its memorandum. In *Lafleur,* the insured did not submit to an examination under oath or provide *any* of the documents sought by Trust. Clearly, the level of cooperation demonstrated by Plaintiffs here far exceeded that of the insured in *Lafleur.* [6]

Here, Arbella had the benefit of a complete and thorough investigation into the circumstances surrounding this fire loss. They obtained information on the cause and origin of this fire loss, the Plaintiffs' personal and financial background and a detailed account of Plaintiffs' activities during the hours immediately preceding and following the fire. Further, they conducted their own independent examination to ascertain the accuracy of this information.

    b.    <u>No showing of prejudice</u>

Arbella is wholly unable to show – indeed it does not even attempt to show – how it has been prejudiced by the failure to provide the financial documents. Failure to cooperate voids the policy only if the insurer makes "an affirmative showing of actual prejudice resulting from" the failure. *Darcy,* supra, at 491. A showing of prejudice is not easily made. See 1 Windt, *Insurance*

---

[6] Plaintiff also cites a Massachusetts District Court case, *Yanis v. Metropolitan Property and Casualty Ins. Co.* (Mass.App.Div.) (2002), which has little, if any, legal precedent value. In any event, the facts in *Yanis* are inapplicable to the case at bar and the insured did not complete the examination under oath.

*Claims & Disputes* § 3:2, at p.179-182 (4th ed.2001). In light of the complete and thorough investigation conducted by Arbella in this case, the Court cannot conclude that the withholding of documents not pertinent to the fire loss has prejudiced Arbella in its determination of coverage. Accordingly, summary judgment must be denied as to the breach of contract claim.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court deny Arbella's Renewed Motion for Summary Judgment.

        Respectfully Submitted,
        THERESA ROMANO, L.R. BLAKE TRUST and
        CONCETTA ROMANO,
        By Their Attorneys,


        //S//Austin J Freeley
        AUSTIN J. FREELEY
        BBO# 563349
        221 Lewis Wharf
        Boston, Massachusetts 02110
        (617) 723-9538


        //S//Stephen Hrones
        STEPHEN HRONES
        BBO# 242860
        Hrones Garrity & Hedges LLP
        Lewis Wharf – Bay 232
        Boston, Massachusetts 02110
        (617) 227-4019

Dated: February 2, 2005