UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 2003-CV-12626-JLA

THERESA ROMANO, L.R. BLAKE TRUST,
and CONCETTA ROMANO,
Plaintiffs

V.

ARBELLA MUTUAL INSURANCE COMPANY
Defendant

**ORDER ON**

**DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT
(Docket # 26)**

ALEXANDER, M.J.

On October 21, 2004, this Court issued an order denying a motion for summary judgment ("the Order") by defendant Arbella Mutual Insurance Co. ("Arbella"). The Order stated, however, that if Arbella did not receive certain documents from the plaintiffs, Theresa Romano, Concetta Romano and the L.R. Blake Trust (collectively, "the Romanos"), Arbella could renew its motion for summary judgment. Although Arbella did receive the documents in question, Arbella has also filed a renewed motion for summary judgment. For the reasons set forth more fully below, the Court ALLOWS IN PART and DENIES IN PART Arbella's motion.

**BACKGROUND**

Theresa and Concetta Romano, 72 and 70-years old, respectively, are sisters who own property in Dorchester, Massachusetts, and Amherst, New Hampshire. Concetta is physically handicapped and Theresa has power-of-attorney on Concetta's behalf. In 1984, the sisters created plaintiff L.R. Blake Trust ("the Trust") and thereafter transferred their ownership interest in the Dorchester, Massachusetts, property, located at 49 Bowdoin Avenue ("the property"), to the Trust. In August 2001, Arbella issued a policy of fire insurance to the Trust pertaining to the property. Additionally, Arbella issued a policy of fire insurance to Theresa Romano for certain personal property that she owned.

Early in the morning of January 1, 2002, a fire occurred at the property while the Romanos were not there. The previous night, December 31, 2001, the Romanos left the property at approximately 11:30 p.m. Theresa thereafter began to feel ill, and the Romanos proceeded to Carney Hospital. Although Teresa, as well as various hospital staff, tried to convince Concetta to enter the hospital with her, Concetta refused and remained in the car while Theresa went to the emergency room. Theresa was released from the emergency room at approximately 6:00 a.m. on January 1, 2002. She and Concetta then spent most of New Year's Day in their car in the hospital parking lot. Theresa did not want to

drive the car because she was concerned that the brakes were not working properly. At approximately 6:00 p.m., someone finally came to drive the sisters to their Amherst, New Hampshire, home.

The Romanos properly notified Arbella of the loss from the fire and Arbella thereafter began an investigation. Both the Arbella investigation and the Boston Fire Department investigation made preliminary conclusions that the fire was caused by arson. As part of Arbella's investigation, and pursuant to the insurance settlement provisions of the policy, Arbella sent notice to the Romanos for examinations under oath on July 3, 2002. Arbella also requested that the Romanos bring financial documents including income tax forms, utility bills and medical forms to the examination. On July 24, 2002, Arbella conducted Theresa's examination although she failed to bring the requested documents. She noted that the fire destroyed the relevant financial information, but that she could readily furnish the documents if needed. Despite these assurances, the Romanos did not produce the documents. Arbella again requested the documents, by letters on September 9, 2002, and October 1, 2003.

The policy requires the Romanos to, *inter alia*, provide Arbella with reasonably requested records and documents pertinent to any loss. The policy also states that no coverage is provided for a loss if the insured intentionally conceals

3

or misrepresents material facts or engages in fraudulent conduct. Additionally, the policy does not provide coverage for loss caused by fire occurring while a building is vacant for more than 60 consecutive days.[1] After repeated efforts to secure the documents from the Romanos, Arbella disclaimed coverage, on March 7, 2003, on the basis that the Romanos breached their duty to cooperate with Arbella by, *inter alia,* failing to provide relevant documents.[2]

---

[1] There is some question as to whether the property was vacant for more than sixty consecutive days prior to the fire. In February 2000, Theresa, as trustee of the Trust, had put the property up for sale. At the time that the Romanos put the property on the market, Theresa appears to have made representations to a realtor that a man named Levon Boudre was living in the lower level of the house and that when a broker wanted to show the house she would call Mr. Boudre and ask him to vacate. Theresa also testified, however, at the examination conducted by Arbella, that no one had ever lived in the house other than Theresa, Concetta, and their parents.

[2] Arbella originally moved for summary judgment on the basis that the Romanos materially breached, and thus voided, the insurance policy by failing to cooperate with Arbella's investigation – that is, by failing to produce the documents requested by Arbella. Arbella also asserted that the policy is void because the Romanos failed to adequately explain the occupancy, or lack thereof, of the property.

Arbella now moves for summary judgment on the basis that the Romanos, even though they produced the requested financial documents, as ordered by this Court, do not have a "post-judgment" right to comply with the policy's cooperation clause. Furthermore, Arbella asserts that the Romanos can not establish that Arbella committed any unfair claim settlement practices in violation of Mass. Gen. Laws ch. 93A and Mass. Gen. Laws ch. 176D. In opposition to the renewed summary judgment motion, the Romanos contend, *inter alia*, that Arbella's motion for summary judgment on the unfair claim settlement practices issue is not properly before this Court because Arbella did not raise it in its original summary judgment motion. The Court does not agree. There is no reason that Arbella can not raise this assertion at this time. The only issue is whether the Romanos have had an opportunity to respond to the summary judgment motion and they have.

ANALYSIS

**The Summary Judgment Standard**

The parameters in which this Court considers a motion for summary judgment are well-defined and familiar. Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (internal citations and quotations omitted). The party moving for summary judgment bears responsibility for showing those portions of the discovery record that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

After the moving party has fulfilled this obligation, the burden shifts to the non-moving party to demonstrate that a trier of fact reasonably could find in its favor. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citing Celotex, 477 U.S. at 322-25); Ismert & Assoc., Inc. v. New England Mut. Life Ins. Co., 801 F.2d 536, 537 (1st Cir. 1986) (describing the non-moving party's burden as one of demonstrating that there is a need for further exploration of the facts). A party

opposing a motion for summary judgment may not rest on mere allegations or denials, but rather, must show that specific facts illustrate a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

In reviewing a motion for summary judgment and the materials offered to support the motion, the role of the Court is not to engage in an analysis of whose evidence is more compelling or credible. Cetronics Fin. Corp. v. El Conquistador Hotel Corp., 573 F.2d 779, 782 (2d Cir. 1978); Peckarsky v. Am. Broad. Co., Inc., 603 F. Supp. 688, 692 (D.D.C. 1984). "[A]t the summary judgment stage, the judge's function is not himself to weigh the evidence." Anderson, 477 U.S. at 249. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." Id. at 255. See also Barretto-Rivera v. Medina-Vargas, 168 F.3d 42, 47 (1st Cir. 1999) ("speculation adverse to the nonmoving party is inappropriate on a motion for summary judgment"); Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990) (in reviewing motions for summary judgment, "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor"). With these parameters in mind, the Court turns to the parties' asseverations.

**Unfair Claim Settlement Practices**

Massachusetts General Laws c. 176D and c. 93A together govern unfair insurance claim settlement practices. Chapter 176D states, in pertinent part, in § 3, that

> (9) . . . . An unfair claim settlement practice shall consist of any of the following acts or omissions:
>
> (e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;
>
> (f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
>
> . . .
>
> (n) Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

Mass. Gen. Laws c. 176D, § 3(9). Chapter 93A, in turn, provides a right of action for "any person whose rights are affected by another person violating the provisions of [G. L. c. 176D]." Mass. Gen. Laws ch. 93A, § 9(1). See also, e.g., Guity v. Commerce Ins. Co. 36 Mass. App. Ct. 339, 343-44, 631 N.E.2d 75, 77-78 (1994) (discussing liability in 176D/93A case).

The Romanos assert that Arbella failed to provide coverage under the policy in a prompt, fair and equitable manner, constituting, in turn, a violation of G. L. c. 93A and G. L. c. 176D. Arbella contends, in response, that because its denial of coverage was based on the information available to Arbella at the time of the denial, Arbella could not have engaged in any unfair settlement practices.

When an insurance company has a "reasonable and good faith belief that it is not obliged to make a payment to a claimant who is asserting a violation of G.L. c. 93A and G.L. c. 176D, § 3(9), asserts the point, and offers to take active steps to resolve the dispute, the company's action, even if ultimately held to be based on a misinterpretation of the law, would not be an unfair settlement practice." Premier Ins. Co. of Massachusetts v. Furtado, 428 Mass. 507, 510, 703 N.E. 2d 208, 210 (1998). "Liability under c. 176D and 93A does not attach merely because an insurer concludes that it has no liability under an insurance policy and that conclusion is ultimately determined to have been erroneous." Pediatricians, Inc., v. Provident Life and Acc. Ins. Co., 965 F.2d 1164, 1173 (1st Cir. 1992). See also Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 468, 645 N.E.2d 1165, 1168 (1995) (insurance company that denied claim in good faith on basis of plausible interpretation of policy did not violate G.L. c. 93A).

Pursuant to both Massachusetts law and the Romanos' policy, the Romanos were required to provide Arbella with "books of account, bills, invoices and other vouchers . . . ." Mass. Gen. Laws c. 175, § 99. Because the Romanos failed to provide this information (until ordered to do so by this Court), Arbella was forced to make its coverage decision on the basis of incomplete information. Whether Arbella's determination that the Romanos had breached the policy by failing to provide the requested, and required, information, ultimately proves correct, Arbella cannot be said to have engaged in unfair settlement practices on the basis of its decision to deny coverage.

The Romanos contend that Arbella did not make a good faith effort to acquire the requested financial documents and that Arbella "chose to sit on its hands, awaiting full cooperation from Plaintiffs." Plaintiff's Reply to Defendant's Renewed Motion for Summary Judgment at 5. Arbella's actions – its repeated requests for the financial information – belie such a contention. Indeed, Arbella should not have had to wait for the Romanos' cooperation. Cooperation should have been forthcoming immediately. Additionally, the Romanos appear to be missing the point. Regardless of what, if any, role the financial information might have played in a coverage assessment, the Romanos were required to produce the information. They did not. Arbella, therefore, had a "good faith" belief that the

Romanos had breached the terms of the policy and that, on that basis, they were not entitled to coverage under the policy. Arbella's motion for summary judgment on the unfair claim settlement practices is therefore ALLOWED.

**Breach of Contract**

In addition to asserting that Arbella engaged in unfair settlement practices, the Romanos also assert, in their complaint, a breach of contract claim. The Romanos contend that they have complied with all of the requirements of the policy and that Arbella, by denying coverage, has breached the policy terms. Arbella asserts, as iterated *infra*, that it is the Romanos who have breached the policy terms by failing to provide required financial information and, in turn, failing to cooperate with Arbella's investigation.

Under Massachusetts law, an insured has a duty to cooperate with an insurer's investigation of a claimed loss. See Mello v. Ingham Mut. Ins. Co., 421 Mass. 333, 336 (1995) (insured's failure to submit to examination under oath constitutes material breach of fire insurance policy); Rymsha v. Trust Ins. Co., 51 Mass. App. Ct. 414, 417 (2001) (insured's failure to provide financial documents constitutes material breach of policy). That duty may include both submitting to a reasonably requested examination under oath and producing documents relevant to the claimed loss. Rymsha, 51 Mass. App. Ct. at 417. See also LaFleur v. Trust

Ins. Co., No. 01-P-794, 2003 WL 21710455, at * 2 (Mass. App. Ct. July 22, 2003) (unpublished opinion) (insured who failed to produce financial documents forfeits right to coverage under fire insurance policy).  Although the Romanos submitted to an examination under oath, they failed to produce their financial documents until ordered to do by this Court.

The Romanos assert that Rymsha is inapposite because it involved a claim for stolen property and the insured's failure to produce financial information in that case was therefore directly pertinent to the insured's claim.  The financial information requested by Arbella may not be pertinent in the same manner, or for the same reasons, as was the financial information in Rymsha, but this does not relieve the Romanos of their duty to cooperate.  Furthermore, Rymsha itself relies on a case, Mello, that involved the investigation of a claim of loss due to a fire.  Although Mello involved an insured's fail ure to submit to an examination under oath, rather than a failure to produce documents, its holding that the failure to cooperate constitutes a material breach of the policy applies as well, as Rymsha directs, to the failure to cooperate through a refusal to produce required documents.  Rymsha and Mello, therefore, when taken together, dictate that the failure to provide documents as required by an applicable insurance policy constitutes a failure to cooperate.

This does not, however, end the inquiry.  Arbella may only base their denial of coverage on the Romano's failure to cooperate if Arbella was actually prejudiced by that failure.  "Failure to cooperate is grounds for denial of coverage only if the insurer makes 'an affirmative showing of actual prejudice resulting from' the failure."  <u>Metlife Auto & Home v. Cunningham</u>, 59 Mass. App. Ct. 583, 590, 797 N.E.2d 18, 23-24 (2003) (quoting <u>Darcy v. Hartford Ins. Co.</u>, 407 Mass. 481, 491, 554 N.E.2d 28, 34 (1990)).  Arbella has made no compelling assertion that it was actually prejudiced by the Romano's initial failure to produce the documents.  Although the Court does not condone the Romano's actions, Arbella now has the information necessary to make an actual assessment of the Romano's coverage claim. The Court therefore DENIES the motion for summary judgment on the breach of contract claim.

**CONCLUSION**

For these reasons, the Court ALLOWS IN PART and DENIES IN PART Arbella's renewed motion for summary judgment.

SO ORDERED.

1/31/06                                         JOYCE LONDON ALEXANDER
Date                                            United States Magistrate Judge